UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————————
                                              )
CAMPAIGN LEGAL CENTER, et al.,                )
                                              )
        Plaintiffs,                           )
                                              )
        v.                                    )        Case No. 23-cv-03163 (APM)
                                              )
FEDERAL ELECTION COMMISSION,                  )
                                              )
        Defendant.                            )
———————————————————————                       )

## MEMORANDUM OPINION AND ORDER

### I.    INTRODUCTION

In August 2019, Plaintiffs Campaign Legal Center ("CLC") and OpenSecrets petitioned Defendant Federal Election Commission ("the FEC" or "the Commission") to initiate rulemaking for a set of amendments made to the Federal Election and Campaign Act of 1971 ("FECA") in 2014. For years, the Commission did not decide on rulemaking—one way or the other—in response to Plaintiffs' petition. So, in October 2023, Plaintiffs filed this lawsuit, alleging that the Commission's delay violates the Administrative Procedure Act ("APA").

Before the court are Plaintiffs' Motion for Summary Judgment, ECF No. 20 [hereinafter Pls.' Mot.], and Defendant's Motion for Summary Judgment, ECF No. 22 [hereinafter Def.'s Mot.]. For the reasons that follow, the court concludes that the Commission's delay in answering Plaintiffs' petition is unreasonable in violation of the APA. The court therefore grants Plaintiffs' Motion and denies Defendant's motion.

## II.     BACKGROUND

### A.     The FEC's Rulemaking Process

Congress has authorized the FEC to promulgate regulations to administer FECA. 52 U.S.C. §§ 30106(b)(1), 30107(a)(8), 30111(a)(8).  Any such rulemaking requires the vote of at least four of the Commission's six members.  *Id.* § 30106(a)(1), (c).

While the Commission may propose rules on its own accord, "[a]ny interested person may file with the Commission a written petition for the issuance, amendment, or repeal of a rule implementing" FECA.  11 C.F.R § 200.2(a)(1); *see* 5 U.S.C. § 553(e).  When the Commission receives a petition, it will, if recommended by the Office of General Counsel ("OGC"), "[p]ublish a Notice of Availability in the Federal Register" seeking public comment.  11 C.F.R. § 200.3(a). The Commission may later choose to publish a Notice of Inquiry, publish an Advanced Notice of Proposed Rulemaking, or hold a public hearing to gather additional input.  *Id.* § 200.3(c).

Only after the public comment period closes on the Notice of Availability will the Commission decide whether it will initiate rulemaking.  *See id.* §§ 200.3(d)–(e), 200.4(a); *see also id.* § 200.5 (listing some of the relevant considerations).  If the Commission declines to do so, "it will give notice of this action by publishing a Notice of Disposition in the Federal Register" that "include[s] a brief statement of the grounds for the Commission's decision."  *Id.* § 200.4(b).  If the Commission decides to proceed with rulemaking, then it will issue a Notice of Proposed Rulemaking ("NPRM").  *See* 5 U.S.C. § 553(b); Def.'s Reply in Supp. of Def.'s Mot., ECF No. 28 [hereinafter Def.'s Reply], Suppl. Decl. of Nevan Stipanovic, ECF No. 28-1 [hereinafter Suppl. Stipanovic Decl.], ¶¶ 13, 18–19.  From there, the Commission will seek public comment on the proposed rule with an eye toward promulgating a final rule.  *See* 5 U.S.C. § 553(c); Suppl. Stipanovic Decl. ¶¶ 20–21.

B.      **Factual Background and Procedural History**

In December 2014, Congress amended FECA to create and establish contribution limits for three new types of "separate, segregated account[s]" for national party committees: one for presidential nominating convention expenses, one for party headquarter costs, and one for legal fees.  52 U.S.C. § 30116(a)(1)(B), (a)(2)(B), (a)(9); Consolidated and Further Continuing Appropriations Act of 2015, Pub. L. No. 113-235, 128 Stat. 2130, 2772 (2014).  On February 13, 2015, the Commission published interim guidance for reporting contributions to and spending from these special-purpose accounts.  Def.'s Mot., Decl. of Nevin Stipanovic, ECF No. 22-1 [hereinafter Stipanovic Decl.], ¶ 4.  Still, CLC and others wrote comments to the Commission urging formal regulation.  *See* Pls.' Mot. at 9 & n.3.  The Commission briefly considered doing so toward the end of 2015 but did not take further action.  *See* J.A., ECF No. 30, at 2 & n.2.

In January 2016, Perkins Coie LLP filed a formal petition for comprehensive rulemaking on the 2014 FECA amendments.  *See id.* at 26–42.  The Commission published a Notice of Availability nine months later on October 27, 2016.  *Id.* at 64.  It received two comments that supported initiating rulemaking, including one from CLC, and two comments that opposed.  *Id.* The Commission otherwise never responded to the petition.

Approximately three-and-a-half years after the Perkins Coie petition, on August 5, 2019, Plaintiffs filed their own petition for rulemaking on the 2014 amendments.  *See id.* at 1–7.  Their request was narrower than Perkins Coie's, in that Plaintiffs asked only that the Commission codify reporting requirements for the special-purpose accounts.  *Compare id.*, *with id.* at 26–42.  Plaintiffs highlighted the inconsistencies in how party committees report contributions to and spending from these accounts, as well as the public's difficulty in discerning the aggregate amounts of each. *See id.* at 2–6.  Plaintiffs asked the Commission to consider rules such as "a new schedule to the

national parties' monthly reports," an "effective 'cross-indexing system,'" or "guidelines on uniform terminology for all committees to use." *Id.* at 6. The Commission approved a Notice of Availability at its first open meeting after Plaintiffs submitted their petition, Stipanovic Decl. ¶ 6, and the notice was published in the Federal Register on August 28, 2019, J.A. at 13–14. The Commission received six comments before the October 28, 2019 deadline. Stipanovic Decl. ¶ 6; *see also* J.A. at 16–49.

Just after the Commission approved the Notice of Availability, it lost its quorum. Stipanovic Decl. ¶ 7. Its quorum was restored when a new Commissioner was confirmed by the Senate and sworn in on June 5, 2020. *Id.* ¶ 8. Shortly thereafter, CLC submitted a comment urging the newly constituted Commission to act on seven pending regulatory matters, including Plaintiffs' petition. *Id.* The Commission's ability to act, however, lasted less than one month, as another Commissioner stepped down on July 3, 2020. *Id.* ¶ 9. The Commission did not have a quorum again until December 2020. *Id.*

After a quorum was restored, CLC submitted yet another comment requesting that the Commission prioritize the same seven rulemakings. *Id.* At that time, the Commission faced a backlog of hundreds of pending matters, including enforcement actions, audits, and advisory opinion requests, some of which were time sensitive. *Id.* ¶¶ 10–13. And it had to address them while understaffed. *Id.* ¶ 11.

Still, from the time the Commission had its quorum restored to the time the parties briefed the instant motions, the Commission completed 23 rulemakings. Stipanovic Decl. ¶¶ 16–22. Each rulemaking is resource-intensive and takes hundreds, if not thousands, of hours. Suppl. Stipanovic Decl. ¶¶ 7–9 (noting rulemakings that have required anywhere from 211.5 staff hours to 4,360

hours).   The Commission typically spends over 200 hours deciding whether to initiate rulemaking alone, and the amount of time required increases with the petition's complexity.  *Id.* ¶¶ 10, 12.

Although it has not yet granted or denied Plaintiffs' petition, the Commission reports having spent 587 hours on it.  *Id.* ¶¶ 10, 14.  The petition, which the agency views as "potentially quite complex," "involves amendments to FECA that have not previously been addressed in a rulemaking and would thus require OGC to propose an entirely new set of regulations."  *Id.* ¶ 14. Further, the petition overlaps with the subject-matter of the Perkins Coie petition, which "may be a better vehicle for addressing the issues CLC raised but would necessitate a more comprehensive and thus more complex rulemaking effort."  *Id.*; *see also* Def.'s Reply at 16.

On October 10, 2023, over four years after filing their petition, Plaintiffs filed suit, challenging the Commission's "unreasonable delay" in resolving the petition.  Compl., ECF No. 1, ¶ 1.  A few months later, the Commission voted unanimously to reopen both Plaintiffs' and Perkins Coie's petitions for public comment.  Suppl. Stipanovic Decl. ¶¶ 23–24; J.A. at 59–70. The resulting Notice of Inquiry was published in the Federal Register on February 14, 2024.  J.A. at 71–72.  The Commission again received six public comments regarding whether to proceed with rulemaking pursuant to one or both petitions.  Stipanovic Decl. ¶ 25; *see also* J.A. at 73–96.

Since then, the Commission has not decided on rulemaking as to either petition.  It has, however, updated its website to enable users to more easily view, filter, and aggregate special-purpose account data.  *See* Def.'s Notice of Subsequent Developments, ECF No. 31.

Both parties now move for summary judgment.

## III.    LEGAL STANDARD

In APA cases, "summary judgment is the mechanism for deciding whether as a matter of law an agency action is supported by the administrative record and is otherwise consistent with

the APA standard of review." *Louisiana v. Salazar*, 170 F. Supp. 3d 75, 83 (D.D.C. 2016).  But instead of deciding whether there is a genuine dispute of material fact under Federal Rule of Civil Procedure 56, the district court "sits as an appellate tribunal," *Am. Biosci., Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001), and determines "whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did," *Sierra Club v. Maniella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006) (internal quotation marks omitted).  Where a Plaintiff alleges unreasonable delay, the court may also look to evidence outside the administrative record to perform this "fact intensive inquiry."  *See Kusuma Nio v. U.S. Dep't of Homeland Sec.*, 314 F. Supp. 3d 238, 242 (D.D.C. 2018) (internal quotation marks and citation omitted).

## IV.    DISCUSSION[1]

Under the APA, an agency must "proceed to conclude a matter presented to it" within "a reasonable time."  5 U.S.C. § 555(b).  Claims that an agency has failed to do so are governed by the so-called *TRAC* factors.  *See Telecomms. Rsch. & Action Ctr. v. FCC* (*TRAC*), 750 F.2d 70 (D.C. Cir. 1984).  The factors are:

> (1) the time agencies take to make decisions must be governed by a "rule of reason," (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason, (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority, (5) the court should also take into account the nature and extent of the interests prejudiced by delay, and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

---

[1] Plaintiffs argue that they have both informational and organizational standing to challenge the Commission's inaction.  *See* Pls.' Mot. at 20–23.  The Commission does not contend otherwise.  *See generally* Def.'s Mot.  The court has reviewed the grounds on which Plaintiffs assert standing and agrees that they may bring this suit.

*Id.* at 80 (internal citations omitted).  The first factor is the most important.  *See In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008).  The fourth factor often carries substantial weight, as well.  *See Milligan v. Pompeo*, 502 F. Supp. 3d 302, 319 (D.D.C. 2020).  These two factors accordingly will drive the court's analysis.

Beginning with the first factor, the court looks to considerations like "the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency" to determine whether the Commission's timeline has been governed by a "rule of reason."  *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003).  The other *TRAC* factors may also inform the court's conclusion on the first factor.  *See Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 115 (D.D.C. 2005).[2]

The Commission has not adequately explained the reasonableness of its timeline.  *See Cutler v. Hayes*, 818 F.2d 879, 898 (D.C. Cir. 1987).  Start with "the complexity of the task at hand."  *Mashpee*, 336 F.3d at 1102.  The Commission only goes as far as stating that Plaintiffs' petition is "*potentially* quite complex."  Suppl. Stipanovic Decl. ¶ 14 (emphasis added).  That does not mean that the petition is *actually* complex.  And the Commission's vague explanation as to why it might be is unpersuasive.  The Commission gestures broadly at the notion that Plaintiffs' petition "involves amendments to FECA that have not previously been addressed in a rulemaking and would thus require OGC to propose an entirely new set of regulations."  *Id.*  But that, in and of itself, does not necessarily make the task complex.  Although the Commission is writing on a blank canvas—which agencies undoubtedly must do from time to time—it does not explain how this rulemaking would involve the kind of "complex scientific and technical questions" that might

---

[2] The parties agree that the second factor plays no role in the court's analysis here, as FECA does not provide a "timetable" for the agency to act that could supply the content for the "rule of reason" in this case.  *TRAC*, 750 F.2d at 80; *see* Pls.' Mot. at 32; Def.'s Mot. at 34–35.

explain a multi-year delay in resolving Plaintiffs' petition.[3]  *See Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F. Supp. 3d 295, 301 (D.D.C. 2014); *accord In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 555 (D.C. Cir. 1999); *Sierra Club v. Thomas*, 828 F.2d 783, 798 (D.C. Cir. 1987).  The Commission also references the need to consider how the petition's subject matter overlaps with the Perkins Coie petition, which "may be a better vehicle for addressing the issues CLC raised but would necessitate a more comprehensive and thus more complex rulemaking effort."  Suppl. Stipanovic Decl. ¶ 14; *see also* Def.'s Reply at 16.  While that may be true, it makes the Commission's delay even more substantial, as it received the Perkins Coie petition over three-and-a-half years before Plaintiffs'.  *See* J.A. at 1, 26.  The Commission does not adequately justify the reasonableness of this delay.

The fourth *TRAC* factor does not help the Commission, either.  This factor instructs the court to consider "the effect of expediting delayed action on agency activities of a higher or competing priority."  *TRAC*, 750 F.2d at 80.  The Commission contends that it is "entitled to deference in how it prioritizes competing matters."  Def.'s Mot. at 39.  It maintains that it has properly spent its limited time and resources on other rulemakings, enforcement actions, and required tasks that it views as more pressing.  *See id.* at 37–42; Stipanovic Decl. ¶¶ 10–13, 16–22. To be sure, the court is not in a position to second-guess the Commission's ordering of its priorities. *See In re Barr Lab'ys, Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991).  And the court is cognizant of the Commission's limited resources.  *See Mashpee*, 336 F.3d at 1101.  But the Commission's other priorities have not caused the agency to put Plaintiff's petition entirely on the backburner for the last several years.  The Commission admits to already spending 587 hours on Plaintiffs' petition— almost *three times* the amount it typically spends answering a petition for rulemaking—yet it does

---

[3] Even if the court excludes the time during which the Commission did not have a quorum, *see* Def.'s Mot. at 36–37, the Commission's quorum was restored at the end of 2020, Stipanovic Decl. ¶ 9.

not explain why that significant commitment of resources has not been sufficient here.  *See* Suppl. Stipanovic Decl. ¶¶ 10, 14.  As already noted, the Commission has not adequately justified its delay with reference to the petition's "potential[]" complexity.  *Id.* ¶ 14.  Nor has the Commission spoken to what more it would need to do to resolve to Plaintiffs' petition.  And it has not asserted that forcing a decision on Plaintiffs' petition would place them at the head of the queue and simply move all other rulemaking petitioners back, producing no net gain.  *See Mashpee*, 336 F.3d at 1100.  While the court acknowledges that resolving to some rulemaking petitions has taken the Commission upwards of thousands of hours, the Commission has not explained why Plaintiffs' petition requires the same.  *See* Suppl. Stipanovic Decl. ¶ 8.  The court therefore cannot conclude on the record before it that competing priorities justify the Commission's delay, or that requiring the Commission to act promptly on Plaintiffs' petition—when it already has expended hundreds of hours on it—would upend its ability to address other matters moving forward.

The remaining factors do not weigh heavily in favor of either party.  Factors three and five—which focus on the interests at stake in the agency's action—at most, tilt slightly in Plaintiffs' favor.  True, "human health and welfare" is not the subject of this rulemaking.  *TRAC*, 750 F.2d at 80.  But courts in this District have repeatedly recognized the importance of the interests that FECA upholds, such as the integrity of the nation's electoral system.  *See Common Cause v. FEC*, 692 F. Supp. 1397, 1401 (D.D.C. 1988); *Democratic Senatorial Campaign Comm. v. FEC*, No. 95-0349 (JHG), 1996 WL 34301203, at *8 (D.D.C. Apr. 17, 1996); *Giffords v. FEC*, No. 19-1192 (EGS), 2021 WL 4805478, at *6 (D.D.C. Oct. 14, 2021).  That said, the Commission cites several facts that it contends "indicate[] that the 'nature and extent of the interests prejudiced' by any alleged delay are necessarily circumscribed."  Def.'s Mot. at 44 (quoting *TRAC*, 750 F.2d at 80).  First, the Commission issued interim guidance for special-account reporting in 2015, which

some in the regulated community have stated provides "adequate clarity." *Id.* at 44–45 (citing J.A. at 69, 77, 81, 83). The Commission also points out that the alleged reporting inconsistencies may be so minor as to avoid impeding comprehensibility and thus that, "on the whole, the disclosure scheme advances the purposes of FECA." *Id.* at 45–46. Finally, the Commission argues that its new website, which allows users to view, filter, and aggregate special-account data, should "ameliorate[]" any concerns about public access. *Id.* at 46–47. While these facts do not diminish the "nature" of the interests at stake, they appear to limit their "extent," so the court does not ascribe substantial weight to factors three and five. *See TRAC*, 750 F.2d at 80.

Lastly, factor six does not affect the court's calculus. Plaintiffs do not allege that the Commission has acted in bad faith. However, the court need not find any impropriety to conclude that the agency's action was unreasonably delayed. *Id.* at 80.

Ultimately, while factors two, three, five, and six make little difference, factors one and four decidedly weigh in favor of Plaintiffs. Because the balance of the *TRAC* factors favors Plaintiffs, the court concludes that the Commission's delay in answering Plaintiffs' petition for rulemaking is unreasonable and thus violates the APA.

## V.    REMEDY

The court now turns to fashioning the appropriate remedy. Most immediately, Plaintiffs ask the court to order the Commission to reach a final decision on its petition within 30 days. Pls.' Mot., Proposed Order, ECF No. 20-3. This would include requiring the Commission to produce a draft NPRM within that time if it were to decide to move forward with rulemaking. *Id.* The court declines to go so far.

"[C]ourts rarely compel an agency to render an immediate decision on an issue." *Orion Rsrvs. Ltd. P'ship v. Kempthorne*, 516 F. Supp. 2d 8, 11 (D.D.C. 2007). This case illustrates why.

The Commission avers that producing a NPRM within 30 days of the court's order would be "nearly impossible." Suppl. Stipanovic Decl. ¶ 16. Drafting a NPRM is an involved process that requires "mastering" the relevant area of law, "weighing the various interests at stake," "crafting a detailed explanation of the Commission's policy objectives and questions," and "anticipat[ing] potentially different directions that the final rule might take." *Id.* ¶ 15. The staff attorneys assigned to the matter must have sufficient time to draft, and then the senior attorneys in OGC, the Regulations Committee, and the Commission must each have time to review and approve it at their respective steps of the process. *Id.* ¶¶ 17–19. Only then can the notice be published in the Federal Register. *Id.* ¶ 19. Requiring the FEC to complete all these tasks within 30 days would be unsound. While the court concludes that the delay up to this point has been unreasonable, "judicial imposition of an overly hasty timetable" also "would ill serve the public interest." *United Steelworkers of Am., AFL-CIO-CLC v. Rubber Mfrs. Ass'n*, 783 F.2d 1117, 1120 (D.C. Cir. 1986). The court's remedy, while requiring prompt action, must not do so at the expense of the agency's ability to ensure that any proposed or final rule is "constructed carefully and thoroughly." *Id.*

Accordingly, the parties shall meet and confer and file a Joint Status Report proposing a reasonable schedule for the Commission to provide a final response to Plaintiffs' petition. Both the D.C. Circuit and other courts in this District have prescribed similar remedies. *See, e.g.*, *In re Pub. Emps. for Env't Resp.*, 957 F.3d 267, 275 (D.C. Cir. 2020); *Muwekma Tribe v. Babbitt*, 133 F. Supp. 2d 30, 41 (D.D.C. 2000). Afterward, the court will retain jurisdiction to "monitor the [Commission's] progress" through regular status reports. *In re Pub. Emps.*, 957 F.3d at 276.

## VI.    CONCLUSION AND ORDER

For the foregoing reasons, the court grants Plaintiffs' Motion for Summary Judgment, ECF No. 20, and denies Defendant's Motion for Summary Judgment, ECF No. 22. The parties

shall file a Joint Status Report by March 2, 2026, which proposes a schedule for the agency to provide a final response to Plaintiffs' petition.

Dated:  January 30, 2026

_____
Amit P. Mehta
United States District Judge